UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **John Doe** | ) | |
| | ) | |
|    Plaintiff, | ) | **Second  Amended Complaint** |
| | ) | **CASE NO. 04-CV-10495NG** |
| Vs. | ) | |
| | ) | |
| **John Ashcroft , U.S. Attorney General.** | ) | |
| **Tom Ridge , Secretary  Homeland Security.** | ) | |
| **Colin L. Powell,  Secretary of State.** | ) | |
| **Carol Timko , U.S. Department of State.** | ) | |
| **Marc Susser, U.S. Department of State.** | ) | |
| **Marva McAllister, Homeland Security.** | ) | |
| **Randa Zagzoug , Homeland Security.** | ) | |
| **Philip Morace,  U.S. Department of Justice.** | ) | |
| | ) | |
|    Defendants. | ) | |
| | ) | |

**Exhibits attached to this second amended complaint :**

Exhibit 1 -  Statement of former vice consul Jeffrey L. Samelson.
Exhibit 2 - USDOJ-OIG Special Report.
Exhibit 3 - Senate Select Committee on Intelligence Report.
Exhibit 4 - Statement of Special Agent Stephen McShea.
Exhibit 5 - Defendant McAllister letter.
Exhibit 6 - USDOJ-OIG Special Report – March, 1998.
Exhibit 7 - "Unclasified Summary"
Exhibit 8 - Defendant Zagzoug written Statements.
Exhibit 9 - Defendant Susser written Statement.
Exhibit 10,11,12 - Defendants Ashcroft, Powell and Ridge- Letters of Intent to Sue confirmations.
Exibit 13 - Defendant  Morace written Statements.

# PARTIES

1.    Plaintiff, John Doe, is proceeding by use of pseudonym for reasons of personal security and to protect United States National Security.

2.    Defendant Colin Powell, U.S. Secretary of State had the ultimate responsibility over the activities of the United State Embassies abroad and over the activities of the officers of the U.S. Department of State acting in their official capacities in the United States, abroad and on the premises of the United States Embassies. He is charged with failure of exercising the powers and duties of the U.S. Department of State in accordance with duly adopted procedures, laws and Constitution of the United States. As an individual, he is charged with failure to remedy wrongs after learning about it, and continued the policy and custom under which constitutional violations occurred, and for gross negligence in managing subordinates who cause violations. He is responsible for depriving plaintiff - without due process of law - of assistance and benefits to which he is entitled, and violating plaintiff's constitutionally protected rights. Defendant Powell is sued in his individual and official capacities.

3.    Defendant John Ashcroft is the Attorney General of the United States. In this capacity, Defendant Ashcroft, at the time of the actions complained of herein, had the ultimate responsibility for the implementation and enforcement of United States immigration laws. According to Sec. 103. [8 U.S.C. 1103] (a)(2), He shall have control, direction, and supervision of all employees and all the files and records of the service. He is charged with failure of exercising the powers and duties of the U.S. Department of Justice in accordance with duly adopted procedures, laws and Constitution of the United States. As an individual, he is charged with failure to remedy wrongs after learning about it, and continued the policy and custom under which constitutional violations occurred, and for gross negligence in managing subordinates who cause violations. He is responsible for depriving plaintiff of constitutionally protected property and liberty rights under the Fifth Amendment to the United States Constitution . Defendant Ashcroft is sued in his individual and official capacities.

4.    Defendant Tom Ridge is the Secretary of Homeland Security. In this capacity, Defendant Ridge is currently responsible for the implementation and enforcement of United States immigration laws. Also according to Executive Order 13284 of January 23, 2003 The Secretary of Homeland Security, Tom Ridge, shall be considered a "Senior Official of the Intelligence Community" for purposes of Executive Order 12333. As an individual, he is charged with failure to remedy wrongs after learning about it, and continued the policy and custom under which constitutional violations occurred, and for gross negligence in managing subordinates who cause violations. He is responsible for depriving plaintiff of constitutionally protected property and liberty rights under the Fifth Amendment to United States Constitution. Defendant Ridge is sued in his individual and official capacities.

5.    Defendant Marva McAllister, former official of the U.S. Department of Justice and currently official of the Homeland Security. She is responsible for the

implementation of the Attorney General directives concerning the handling of classified information according with internal regulation, and I.N.A. Sec. 103. [8 U.S.C. 1103] (a)(2), concerning the files and records of the service. Defendant did not adhere to this laws and regulations disclosing classified information, exposing plaintiff as a confidential source of information to U.S. Government, enhancing the ongoing danger to plaintiff security. She conspired and intentionally made use of knowingly false information, with the clear intent of depriving plaintiff of constitutionally protected property and liberty rights under the Fifth Amendment to the United States Constitution. She is sued in her individual capacity.

6.      Defendant Carol Timko, official of the U.S. Department of State. She is charged with conspiring with and/or aiding and abetting Defendants Randa Zagzoug and Philip Morace to deprive plaintiff of constitutionally protected property and liberty rights under the Fifth Amendment to the United States Constitution. Defendant Carol Timko is sued in her individual capacity.

7.      Defendant Marc Susser, official of the U.S. Department of State. He is charged with direct participation and conspiring with and/or aiding and abetting Defendants Randa Zagzoug, Philip Morace to deprive plaintiff of constitutionally protected property and liberty rights under the Fifth Amendment to the United States Constitution. Defendant Susser is sued in his individual capacity.

8.      Defendant Randa Zagzoug, former official of the U.S. Department of Justice and currently official of the Homeland Security. She is responsible for the implementation of the Attorney General directives concerning the handling of classified information according with internal regulation OPPM 98-10 and according to Sec. 103. [8 U.S.C. 1103] (a)(2), concerning the files and records of the service. Defendant did not adhere to this laws and regulations facilitating the disclosure of classified information exposing the plaintiff as a confidential source of information to U.S. Government, enhancing the ongoing danger to plaintiff security. She conspired and intentionally made use of knowingly false information, obtained from defendants Timko and Susser, with the clear intent to deprive the plaintiff of due process. She is charged with direct participation and conspiring with and/or aiding and abetting Defendants Timko, Susser, and Philip Morace to deprive plaintiff of constitutionally protected property and liberty rights under the Fifth Amendment to the United States Constitution. Defendant Randa Zagzoug is sued in her individual capacity.

9.      Defendant Philip Morace, Official of the U.S. Department of Justice, as Immigration Judge, according to INA/ACT 101(4) is the subject to supervision and shall perform such duties as the Attorney General shall prescribe. He is responsible for the implementation of the Attorney General directives concerning the handling of classified information according with internal regulation OPPM 98-10 and according to Sec. 103. [8 U.S.C. 1103] (a)(2), concerning the files and records of the service. Defendant did not adhere to this laws and regulations facilitating the disclosure of classified information exposing the plaintiff as a confidential source of information to U.S. Government, enhancing the ongoing danger to plaintiff security. Defendant was aware that defendant

Randa Zagzoug was using false information about plaintiff with the intent to deprive plaintiff of due process. Defendant Philip Morace is charged with direct participation and conspiring with and/or aiding and abetting Defendants Zagzoug to deprive plaintiff of constitutionally protected property and liberty rights under the Fifth Amendment to the United States Constitution. Defendant Philip Morace is sued in his individual capacity.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act).

11.    Plaintiff' claims for relief arise under the Fifth Amendment to the United States Constitution.

12.    Venue is proper under 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this judicial district.

## INTRODUCTION

13.    This is a constitutional civil action for declaratory judgement, injunctive and compensatory relief for violations of plaintiff's constitutionally protected property and liberty rights under the Fifth amendment to the Constitution of the United States. Plaintiff seeks to require Defendants Powell, Ashcroft and Ridge to cease depriving plaintiff of his substantive due process right to liberty and to provide assistance and benefits to which the plaintiff is entitled.

14.    Plaintiff seeks monetary compensatory relief for economic loss, intentional infliction of emotional distress, pain and suffering as consequences of violationg of plaintiff's constitutionally protected property and liberty rights by defendants McAllister, Zagzoug, Morace, Timko and Susser.

15.    Plaintiff, also brings this action against all defendants for failure to protect the sources and methods , intentional disclosure of confidential sources and methods, conspiracy to disclose confidential sources and methods , intentional infliction of emotional distress , pain and suffering , and forceful abandonment of his family, deprivation of life, liberty and professional achievement in violation of Plaintiff's Substantive due process right to liberty under the Fifth amendment to the Constitution of the United States.

16.    Defendants Powell, Ashcroft and Ridge were personally informed by the plaintiff about the violation of clearly established Statutory law and Constitutional rights by their subordinates, which resulted in the plaintiff's impossibility to function as a human being and to engage in common and basic occupations of life. Defendants were personally informed about the continuing danger the plaintiff was placed in, because of disclosure of classified information, and because of conspiracy to disclose the plaintiff as

a confidential source by their subordinates, McAllister, Morace, Zagzoug, Susser and Timko. Defendants Powell, Ashcroft and Ridge did not act to correct any ongoing constitutional violations by their subordinates after learning about it. By being deliberately and recklessly indifferent to this continuing danger to plaintiff, Defendants Powell, Ascroft and Ridge violated plaintiff's Procedural and Substantive due process right to property and liberty under the Fifth Amendment to U.S. Constitution.

17. Defendants McAllister, Zagzoug, Morace, Timko and Susser as officers of the United States acting under the color of law, willfully engaged, aided or abetted each other in fabrication of false information detrimental to plaintiff liberty, and in disclosing of classified information in violation of E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C . and Sections 641, 793, 794, 798, and 952, Title 18, United States Code , affirmatively placing the plaintiff in danger, violating plaintiff's constitutionally protected substantive due process right to liberty under the Fifth Amendment to U.S. Constitution.

18. Defendants McAllister, Zagzoug, Morace, Timko, Susser as officers of the United States, while fully aware of plaintiff's statutory and constitutional rights because of plaintiff's special relationship with U.S. Government, intentionally and willfully manufactured false information, and made derogatory, defamatory and humiliating statements about the plaintiff, knowing that their actions will inflict extreme emotional distress, pain and suffering on the plaintiff's state of mind.

19. Defendants actions made it impossible for plaintiff to have a normal life inside or outside the United States. Defendants Powell and Ridge as senior members of the Intelligence Community and Defendant Ashcroft as Attorney General have a Statutory and Constitutional duty to assist plaintiff according to "PL-110 program" (50 U.S.C. 403h) complemented with specific internal regulations regarding the assistance of former U.S. confidential sources of information. They did not act in the past and they will not act in the future unless this court will issue a declaratory and injunctive relief as to require defendants to cease depriving plaintiff of his substantive due process right to liberty and resume a normal life.

20. Defendants actions hijacked plaintiff's life during the most productive years of somebody's life. This was done intentionally and maliciously, according to direct evidence incorporated in this civil action. Plaintiff has no other alternative but to file this complaint to recover and resume a normal life as soon as possible.

## FACTS

21. Under a clear agreement of strict confidentiality and protection, inside a U.S. Embassy, the plaintiff was asked by Jeffrey L. Samelson, former U.S. vice consul to covertly collect information on behalf of the United States. The agents assured plaintiff that the assistance being offered was required by the laws of the United States. A letter from that vice consul is available as evidence (Exhibit 1, attached to this complaint), in which he confirms that he was an intermediary between the plaintiff and other U.S. Officials with whom the plaintiff had interacted for intelligence matters.

5

22.    During the following period of time at great risk, the plaintiff provided important information to U.S. Government, undertaking more and different types of activities which exposed plaintiff to grater danger.

23.    After a meeting in which the plaintiff reported a breach in security within the U.S. Intelligence Community, the plaintiff was physically intercepted by foreign intelligence officers who identified the plaintiff as a source of information to US Government.

24.    Plaintiff reported the encounter with the foreign intelligence officers and reiterated the previous strong signs of security breaches, and the fact that the foreign intelligence officers  promised  that they will see the plaintiff again. It was clear that the relation was compromised. The plaintiff asked for protection and resettlement according with the agreement made earlier inside the U.S. Embassy.

25.    Without any explanation , the plaintiff received no assistance to which he was entitled according to promises made and statutory law, 50U.S.C. Sec.403h (PL-110 program), affirmatively placing the plaintiff in danger, arbitrarily and recklessly being indifferent to plaintiff security. Plaintiff found himself without any protection , deprived of the basic rights as a human being , he lost his  way of life as a free individual , his family and everything he had.

26.    Failure to observe the law and constitutional obligations to protect their sources of information was a matter of policy. U.S. Intelligence case officers were not reporting breaches in security to higher level even after sources of information were vanishing or being killed. In their turn the management was not reporting these failures, which was against their statutory obligation under Section 502 of the National Security Act of 1947 (50 United States Code, Section 413(a)) to notify the Congressional intelligence committees of "any significant intelligence failure[s]." These policy resulted in the death of at least 10 intelligence sources. (Exhibit 2, U.S.D.O.J-O.I.G. Special Report -  attached to this complaint).

27.    Plaintiff reported a breach in security  for the first time to U.S. Intelligence case officers in the area of operation of the high ranking intelligence officers Harold J. Nicholson and Aldrich Ames who were both engaged in espionage against the U.S. at that time, and later arrested and convicted for espionage against the United States. Evidence shows that there were no other leads or active sources coming from the same area, " producing anything worthwhile" (Exhibit 3,- Senate Select Committee on Intelligence - attached to this complaint).

28.    Aldrich Ames (Chief of the SE Division – Russian – East European) was in charge of assessing breaches in security coming from the area where the plaintiff was reporting there were breaches in security. It is obvious that Aldrich Ames was not interested to investigating himself, and if the breaches were reported to him , he did not

inform the F.B.I. Counterintelligence as required. (Exhibit 3,- Senate Select Committee
on Intelligence-attached to this complaint).

29.    Harold J. Nicholson was the highest ranking intelligence officer in the
area, the C.I.A. chief of station. He was engaged in espionage against the U.S. at the
same period of time and if any breaches were reported to him, he was sending back
tainted information because of his own activities.

30.    When plaintiff arrived in Boston, he contacted both the C.I.A., the F.B.I
and the State Department and reported again the breaches in security in the area of
operation of Aldrich Ames and Harold Nicholson. Because the F.B.I was not informed
as required by the C.I.A. Aldrich Ames, before the plaintiff did, they become suspicious
and put Aldrich Ames under surveillance. Because not all breaches could be attributed to
Aldrich Ames and because Harold Nicholson was sending tainted information , Harold J.
Nicholson was put under surveillance too. (Exhibit 2, U.S.D.O.J-O.I.G. Special Report-
highlight text, attached to this complaint).

31.    Also, according to evidence available now, the officers investigating
Ames did not remember why they started the investigation, which is not true and
obviously could not be possible. They knew that the source who provided the
information, the plaintiff, was intentionally abandoned in order to take credit for his work
. (Exhibit 3,- Senate Select Committee on Intelligence-attached to this complaint).

32.    The higher ups were tolerating this policy of abandoning of their sources
of information, because their were coming out claiming leadership and extraordinary
cooperation . The truth is that all they did, it was to check the bank accounts of Harold J.
Nicholson and Aldrich Ames after they received information from plaintiff who they
wanted vanished to take credit for what followed.

33.    While overseas plaintiff did not choose to cooperate with foreign
intelligence against the U.S. interest and extracted himself from the danger zone. Plaintiff
arrived in Boston , Massachusetts ,and immediately contacted State Department who sent
in Special Agent Stephen J. McShea (Exhibit 4).

34.    Plaintiff was advised to file an asylum application, without writing down
plainly about his relation with U.S. Government and he was told that it was safe to
verbally tell to whoever would interview him concerning his asylum application.

35.    The State Department and the Justice Depatment had a duty to assist the
plaintiff according to promises made by using the PL110-Program, and special internal
rules in implementing 50 U.S.C. Sec.403h, not to just let plaintiff file for asylum.

36.    Plaintiff had his interview with asylum officer Louis Cotto at the INS
office in Boston. Plaintiff informed the asylum officer that his relation with U.S.
Government was strictly confidential and the relation was compromised only at the
intelligence agencies level.

37.    After a period of time a third party, Mr. Bradley Sageman (witness), working for a private company (PeaBody & Lane Inc.) a non U.S. Government agency and unauthorized to receive classified information, having no need to know about plaintiff confidential relationship with U.S. government, handed to plaintiff a letter signed by defendant Marva McAllister (Exhibit 5). The letter was not in an envelope, the letter is identifying plaintiff as a confidential source of information and other detail which is classified information pursuant to E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C. Mr. Sageman was aware of the contents of the letter , he was having another copy for himself and told plaintiff that he was surprised the plaintiff was denied asylum.

38.    Defendant Marva McAllister employee of the DOJ disclosed for the first time classified information to a third party, with no need to know, outside the Intelligence Community, against E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C, Sections 641, 793, 794, 798, and 952, Title 18, United States Code and Internal D.O.J. regulations concerning the handling of classified information. Defendant also disclosed that US Government had engaged in activities that were incompatible under the 1963 Vienna Convention On Consular Relation. Disclosing classified information outside the Intelligence Community defendant McAllister created an irreversible danger to plaintiff and other people associated with plaintiff.

39.    As the evidence shows defendant McAlistar Intentionally sent the letter containing classified US Government information to a private non US Government organization. As the Exhibit 5 shows the letter was addressed to the third party PeaBody & Lane Inc. This was done willfully, maliciously and in bad faith taking into account the fact that plaintiff informed the defendant that the relation was compromised only at the intelligence agencies level.

40.    Also a business card of a U.S. official still stationed overseas at the time , Suzzana Kempe (witness), which was in plaintiff's passport when I handed it over to the interviewing asylum officer , was missing after the interview. Later at the hotel where I was staying, another third party, and worse, a foreign national, approached plaintiff asking if that business card was his. That was more then gross negligence, it was intentional and malicious in order to confirm information defendant disclosed earlier in the letter sent to the unauthorized third party.

41.    Plaintiff contacted both Department of State and the F.B.I. and reported about defendant McAllister disclosure of classified information. Plaintiff also sent a registered letter to the attorney general in Washington and was informed that the letter was received by an FBI special agent (witness) assigned at the Justice Department at the time (Post office receipt and FBI Special Agent' business card are available as evidence).

42.    Because Defendat McAllister was stating in her letter that "an opinion from the State Department Bureau of Asylum and Humanitarian Affaires" supports her decision to deny plaintiff request for asylum. Plaintiff contacted Mr. John McGruder (witness) at the State Department Bureau of Asylum and Humanitarian Affaires. Mr.

McGruder told plaintiff that they have no record of ever being asked about an opinion concerning my case.

43.    The INS was required by internal regulations to ask the State Department Bureau of Asylum and Humanitarian Affaires for an opinion in adjudicating asylum application. Because this process was such a routine, the State Department developed a procedure issuing a superficial "standardized" statement ", also known as "sticker response": "We have no specific information about this applicant, refer to country reports ". Country reports, which is available on the internet, is mostly a compilation of refugees and asylum seekers unverified stories. It is important to note that this superficiality not only destroys individuals lives as plaintiff's , but undermines the safety and security of the United States. In March 1998, during the investigation on how to individuals arrested for plotting to bomb the New York subway and Brooklyn bridge entered and remained in the United States (Exhibit 6), the immigration judge in that case, judge Ho, said that while the State Department generally provides a "country conditions" report to assist the court in evaluating the applicant's assertions about his fear of persecution, she believed that the State Department reviewed each application thoroughly .On the other hand  , Bill Bartlett, the Director of the State Department Office of Asylum Affaires in that case, was excusing the superficiality of the Department of State, that he had only part time staff and also that the Immigration and Naturalization Act of 1995 greatly reduced the role of his office in the asylum process, and that the 8 CFR § 208.11, made it optional for judges and asylum officers to consider the information of his department.(Exhibit 6).

44.    After John L. McGruder  contacted Special Agent Mark S. Etelamaki (now serving a jail sentence) who was stationed overseas at the time, and confirmed plaintiff relation with US Government, he asked Defendant Zagzoug to schedule the plaintiff administrative hearing with the immigration court. Immigration court is an arm of the D.O.J, not independent and under the control of  Defendant Ashcroft. Mark S. Etelamaki was put in touch with  plaintiff by the Information Management Officer Harry Lumley (witness), also stationed overseas at the time.

45.    Plaintiff reported to Mr. Lumley and Mr. Etelamaki about the disclosure of classified information earlier by Defendant McAllister and requested that no further classified information would be disclosed to unauthorized persons during immigration court proceedings. Plaintiff was told by Mr. McGruder that he would ask for a classified hearing with the immigration court.

46.    The hearing not only that was not classified but Defendant Zagzoug, who scheduled the hearing , and Defendant Morace did not follow internal rules concerning handling of classified information, OPPM 98-10, drafted in accordance with  E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C. They were fully aware that the information contained was classified under E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C. Also plaintiff informed them and submitted legal material showing that the information was classified.

47.    Plaintiff informed both defendant Zagzoug and Morace, both employees of the Justice Department and subordinates of John Ashcroft, about the previous disclosure of classified information outside the intelligence community by defendant McAllister. Plaintiff expressed his concern that it would not happen again. Defendants Zagzoug and Morace did exactly the opposite, ignoring internal rules and regulations (OPPM 98-10), besides Federal Statutory law. That was done intentionally, willfully, maliciously and with the intent to annoy and inflict extreme emotional distress on the plaintiff state of mind.

48 .    Defendant Zagzoug was required pursuant to their own internal regulations, OPPM 98-10, to request the introduction of special procedure when it was expected that the proceedings involved handling of classified information. Defendant intentionally ignored these regulations.

49.    Defendant Zagzoug, personally conducted proceedings in open to the public hearings, allowed access to information, otherwise deemed classified, to personnel in her office who have no need to know or any security clearance. Any other time, in open to the public hearings another INS counsel, who seemed to be familiar with the case, was representing Mrs. Zagzoug . This was against to what Mr. McGruder (witness) told plaintiff, that defendant (some kind of supervisor), would take care personally of the case. Also it is very unlikely that any of the INS counsels had any security clearance according to Classified Information Procedures Act PL 96-456, or their own internal rules (OPPM 98-10).

50.    Documents containing classified information like the letter from former vice consul Jeffrey L. Samelson(Exhibit 1) , and the so called "unclassified summary"(Exhibit 7) identifying the plaintiff as a confidential source to U.S. Government had no markings as required and were available to anybody in her office without a need to know or any security clearance.

51.    Once the Government put their imprimatur and admitted in the so called "unclassified summary" which identified the plaintiff as a confidential source to U.S. Government , allegations are no more allegations and all documents related to plaintiff, including Top Secret military Id, become classified information according to to E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C. All papers were available to anybody in her office without a need to know or any security clearance.

52.    Despite the fact that Defendant Zagzoug was made familiar with the case by Department of State John L. Mc.Gruder, and the plaiintiff was no stranger to U.S.Goverment , Defendant Zagzoug involved two interpreters two translate paintiff's confidential and personal idendification documents (millitary id, etc), which were already on the reccord form the previous hearing with defendant McAllister who missed to disclose them to unauthorized third party. Defendant Zagzoug was disclosing what ever was not disclosed complementing defendant McAllister. It is very unlikely that any of the interpreters had any security clearance according to Classified Information Procedures Act PL 96-456, or their own internal rules (OPPM 98-10). Also it is unclear

for whom Defendant Zagzoug was translating the documents for . All documents translated were self explanatory without translation, let alone the Department Of State and the D.O.J already knew that kind of information.

53.    Copies of those documents, some classified Top Secret by the foreign government and also considered classified according to E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C., were sent by regular mail to plaintiff street address. This was against Classified Information Procedure Act and U.S.D.O.J (OPPM 98-10) internal regulations. Furthermore the plaintiff never requested copies of his own Ids, he had the originals and would have not agreed to be mailed by regular mail to anybody. Also, anybody without a need to know and proper security clearance in defendant' office was having access to those documents, again a clear violation of their own internal regulations (OPPM 98-10) concerning the handling of classified information.

54.    Jeffrey L. Samelson, former vice consul , personally called  defendant Carol Timko at the Department of State and informed her about plaintiff relation with US Government, stating that he was an intermediary. According to defendant Timko , when she tried to send the information from Mr. Samelson to defendant Randa Zagzoug , Mrs. Zagzoug did not want the information , saying that she knows and does not need the information. On the other hand ,defendant Zagzoug was  submitting country reports available on the internet with no relevance to plaintiff, and was stating that the State Department has no information about plaintiff (Exhibit 8). She was doing exactly what defendant McAllister previously did with the intent of trivializing plaintiff case and refer only to United Nations regulations, disregarding plaintiff constitutional rights as a result of his special relationship with U.S. Government. While manufacturing the record, defendant was disseminating classified information about plaintiff to unauthorized persons as shown in previous paragraphs.(Exhibit 8).

55.    As stated at paragraph 54, defendat Zagzoug was interested to have on the record that the Department of state has no information about plaintiff, which it was not true. On the other hand defendant Zagzoug sent by regular mail  to plaintiff street address the so called "unclassified summary" (Exhibit 7). This "unclassified summary" was identifying the plaintiff by his true name and the fact that the plaintiff was a former confidential source of information to U.S. Government. Information contained in that " unclassified summary " it is clearly considered classified information according to E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C. ,and presumed to cause damage to U.S. National Security if disclosed according to E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C. Sending that kind of information by regular mail was against Classified Information Procedure Act and USDOJ-INS (OPPM 98-10) internal regulations concerning the markings and handling of classified information. Furthermore the plaintiff never requested that kind of information to be mailed to him , the plaintiff knew who he was. Defendant acted intentionally and maliciously with the intent to annoy the plaintiff, because the plaintiff complained about defendant McAllister when she put on the paper and disclosed for the first time, outside the Intelligence Community to unauthorized third party, plaintiff true name and identified him as a former confidential source of information to U.S. Government.

56.     Plaintiff contacted defendant Carol Timko and informed her that defendant Randa Zagzoug was providing false information with the source being defendant Timko's office. Plaintiff asked defendant Timko , who was her duty, to transmit real information received from former vice consul Jeffrey L.Samelson to the INS. Defendant Timko told plaintiff that she was not his lawyer. This superficiality, which almost led to the bombing of the Brooklyn bridge and New York subway, was still in place despite the investigation by a commission during which the same office of defendant Timko's , was excusing themselves saying that they only have part time staff. What the part time staff has to do with malicious do nothing attitude when the plaintiff asked defendant Timko to transmit nothing else but real information. In plaintiff's case defendant Timko send what defendant Zagzoug wanted to hear. That terrorist plot to blow up Brooklyn bridge and the New York subway was not consummated because one of the plotters, at the last moment, had a change of hart and walked up to a transit police officer and disclosed the conspiracy. Only luck saved hundreds of innocent lives.(Exhibit 6).

57.     During the proceedings , Defendant Zagzoug submits a statement signed by Marc Susser who was the head of defendant Carol Timko's office (Exhibit 9). Despite that Mrs. Timko clearly was informed about my relation with US Government by former employee of the State Department former vice consul Jeffrey Samelson, in his statement defendant Susser states that the State Department has no information about the plaintif. Plaintiff called defendant Susser and requested to send the real information to the INS court .Defendant Susser said that it was too late . It was clear that Mr. Susser did not care that Mrs. Zagzoug used his false statement to disclose the sources and methods of the US Government, and he didn't care that his false statements would be used to inflict damage to US National Security.

58 .    Defendant Morace, employee of the Justice Departmennt, as immigration judge, was required pursuant to OPPM 98-10 to introduce special procedures in handling classified information.

59.     Defendant Morace, conducted proceedings in open to the public hearings, allowed access to information, otherwise deemed classified, to court personnel who had no need to know or any security clearance, against Classified Information Procedures Act PL 96-456, or their own internal rules (OPPM 98-10).

60.     Documents containing classified information, like letter from former vice consul Jeffrey L. Samelson , and the so called "unclassified summary" identifying the plaintiff as a confidential source to U.S. Government had no markings as required by Classified information Procedures Act PL 96-456, or their own internal rules (OPPM 98-10)., and freely available to unauthorized court personnel.

61.     Information about plaintiff case was available on the regular automated phone system available to anybody with access to a phone. Also plaintiff name, case status and nature of the case was listed on the wall outside the court room. All this was

against their own internal rules (OPPM 98-10) and Classified information Procedures
Act PL 96-456.

      62.    Defendant Morace , as defendant Zagzoug did, was trying to manufacture
a trivial asylum case by knowingly admitting false evidence, like the State Department
knew nothing about plaintiff, submitted by defendant Zagzoug. Defendant Morace, who
was chosen to be on plaintiff case by Mrs. Zagzoug, who scheduled the plaintiff's case,
he was asking plaintiff about his religion, and other things completely not related to
plaintiff reason of applying for asylum. Also for the record he allowed defendant
Zagzoug to ask questions not related to plaintiff reason of applying for asylum . Also for
the record, defendant himself, asked Defendant Susser to send a "sticker response"
(Exhibit 9 ) saying that the State Department has no information abut plaintiff and to
refer to country reports available on the internet. It was clear that an implied agreement
existed between defendant Morace and defendant Zagzoug to trivialize and deny the
plaintiff's asylum application.

      63.    The immigration court hearing started in 1998 and it lasted two years ,
the plaintiff was scheduled countless times in open to the public hearings just to get
another date, and any other time another INS counsel was representing the INS, who
seemed to be familiar with the case. Also it is very unlikely that all if any of the INS
counsels had security clearance according to Classified Information Procedures Act PL
96-456, or their own internal rules (OPPM 98-10). It was defendant duty to ensure that
court personnel with access to the case had proper security clearance.

      64.    After two years defendant Morace considered the record closed, that was
year 2000, and decided that he would issue a written decision. According to internal
immigration rules the immigration judge is required to issue a decision within 60 days.
Because the time was passing well over 60 days (OPPM 93-1 Immigration Judge
Decisions), the plaintiff was still being deprived of basic liberties, and classified
information were being disseminated all over regardless of any clearance. The plaintiff,
again, contacted the Justice Department through a certified letter addressed to defendant
John Ahscroft . No answer or any action was taken.

      65.    After two weeks the plaintiff filed this complaint , judge Morace issued
his decision denying plaintiff asylum. That was after four years since the record with the
immigration court was closed (well over 60 days), and curiously after two weeks the
plaintiff filed this civil complaint .

      66.    Defendant Morace sent his decision by regular mail to plaintiff street
address. Although he denied plaintiff asylum pursuant to United Nation Convention
Against Torture, defendant again identified the plaintiff as a source of information to U.S.
Government, using the word "spy", plaintiff never refereed to himself as a "spy", and
stating that "the applicant has not provided evidence that as a spy he faces a reasonable
possibility of persecution by the government of …" and he found that it would be
"legitimate prosecution by the authorities …" if the plaintiff would be prosecuted for
being a "spy" on behalf of the U.S. Government (Exhibit 13). Besides disclosing the

plaintiff as a confidential source to U.S. Government, these statements were clearly meant to annoy and inflict emotional distress on the plaintiff state of mind. Furthermore once the U.S. Government put their imprimatur and admitted in the so called "unclassified summary" that the plaintiff was a confidential source to U.S. Government , allegations are no more allegations, they become classified information according to to E.O. 12356, E.O. 12958 , Sec426, Title 50 U.S.C.

67.    In contrast Judge Morace granted asylum in less then half a year to an alien who obtained his visa using a false passport, entered the US using the false documents and went underground with the help of special interest ethnical group, and to make a mockery of the whole system, because he had no evidence for what he was claiming , he brought in an individual claiming to be reincarnated and identified the alien from his past life. Defendant Morace accepted this science fiction and granted asylum to the said alien. This is the same Department of Justice in charge to defend the United States. Available for evidence is the said alien attorney's statement concerning the false documents and reincarnation. Because this alien manage to fool trained US Embassy officials and trained custom officials at JFK airport, it is clear that a specialized ring in counterfeit documents was involved. Although it was proved to be fatal to United States security in numerous occasions, the use of false documents by terrorists , neither the D.O.J or Homeland Security showed any interest to investigate this ring in counterfeit documents.

68.    As stated at paragraph 45 the plaintiff was told by Information Management Officer Harry Lumley (witness) that Special Agent Mark S. Etelamaki will monitor and make sure no further classified information will be disclosed. Plaintiff contacted Special agent Mark Etelamaki again and informed him that plaintiff's case was still handled improperly and classified information was improperly handled and disseminated. Because Mr. Etelamaki, during the same time, was having himself very serious problems, he was not really looking into plaintiff's case. Mr. Etelamaki was convicted on October 1, 2001 and is no longer employee of the U.S. Government.

69.    On August 5th, 2003 the plaintiff wrote to Attorney General Ashcroft, Secretary Ridge, and Secretary Powell a certified letters of intent to sue.(Exhibits 10, 11, 12), in which the plaintiff provided details about intentional violation of U.S. National Security laws concerning the protection of sources and methods, the improper and illegal handling of classified information by their subordinates, McAllister, Zagzoug , Morace, Timko and Susser , and the ongoing violations of Plaintiff's rights. Defendants Ascroft, Ridge and Powell never responded and did not act to remedy any ongoing violations of the plaintiff clearly established rights.

## CLAIMS

### I. Violation of Fifth Amendment Due Process Liberty and Property Rights.

70.    Plaintiff has a constitutionally protected liberty and property interest. Defendants' actions violate the Due Process Clause of the Fifth Amendment to the

United States Constitution because defendants have a special relationship with plaintiff and because defendants actions or lack of action have created and now enhance the danger to plaintiff. Because of the highly vulnerable situation in which plaintiff have been placed by defendants, defendants have a constitutional duty to protect plaintiff's fundamental right to personal security and to provide for plaintiff' basic needs. Defendants have breached this duty.

71.     Defendants violated the plaintiff substantive due process right by impermissibly depriving the plaintiff of an interest so fundamental as liberty, after the U.S. Government created a special relationship with the plaintiff. Defendants created a substantial danger to plaintiff's personal security. Such danger continues today and will continue for the rest of plaintiff' life. Defendants violate the Constitution by being deliberately and recklessly indifferent to this continuing danger. Plaintiff sacrificed his personal relationships, career and education based on promises inside the U.S. Embassy. And now defendants actions or inaction prevents the plaintiff to engage in common occupations of life which are essential to free men, a right recognized by the U.S. Constitution, and violated by defendants.

72.     Defendant Colin Powell as senior official of the Intelligence Community has a duty according to Executive Order 12333 Section 1.7  to protect the intelligence sources and methods from unauthorized disclosure and to report to the Attorney General possible violation of federal criminal laws concerning the sources and methods. Defendant failed to remedy wrongs after learning about it, and continued the policy and custom under which constitutional violations occurred. After being personally informed Defendant  knew or ought reasonably have known that by not acting to remedy wrongs the plaintiff would continue to be deprived of liberty in violation of the Fifth Amendment to the United States Constitution.

73.     Defendant Marva McAllistar , intentionally disclosed classified information,  plaintiff identity and his confidential relationship with the U.S. Government, enhancing the danger to plaintiff liberty and personal security. Defendant knew or ought reasonably have known that by violating clearly established rules and regulations the plaintiff would  be deprived of liberty in violation of the Fifth Amendment to the United States Constitution. She intentionally, maliciously and in bad faith disclosed information, affirmatively placing the plaintiff in great danger.

74.     Defendant Randa Zagzoug, conspired and intentionally made use of knowingly false information obtained from defendants Timko and Susser, with the clear intent to deprive the plaintiff of due process right and to deprive the plaintiff of liberty in violation of the Fifth Amendment to the United States Constitution. Defendant Randa Zagzoug violated clearly established statutory and constitutional rights of which a reasonable person would have known. She clearly violated Federal Statutory [8 U.S.C. 1103] Regulations concerning the handling of USDOJ(INS) records, by disclosing the plaintiff identity and his confidential relationship with the U.S. Government, enhancing the danger to plaintiff liberty and personal security. Defendant Randa Zagzoug violated clearly established internal U.S.DOJ(INS) regulations (OPPM 98-10), concerning the

handling of classified information which resulted in irreparable damage to plaintiff personal security. This was done intentionally according with her own statements available as evidence. She accused the plaintiff of betraying his own country (exhibit 8) on behalf of the U.S. Government , among other derogatory statements . Defendant Randa Zagzoug was clearly aware that her actions were unconstitutional and not only that she would have known , but was fully aware that the plaintiff was being deprived of his liberty without due process, and was subjected to mental pain, this according with her own written statements in which she was concerned if her actions during the proceedings qualifies as Torture.(Exhibit 8)

75.      Defendant Carol Timko, official of the U.S. Department of State was responsible to transmit correct information about the plaintiff, especially after she was personally informed by former U.S. Vice Consul Jeffrey Samelson. Instead she conspired /abetting defendant Randa Zagzoug and transmitted the false information used by Randa Zagzoug to violate the plaintiff Constitutional due process right, and deprive the plaintiff of his liberty. Defendant Carol Timko knew or ought reasonably have known that by violating clearly established rules and regulations the plaintiff would continue to be deprived of liberty in violation of the Fifth Amendment to the United States Constitution. She intentionally and maliciously and in bad faith  sent false information, resulting  in violating  plaintiff constitutional rights under the 5th Amendment.

76.      Defendant Marc Susser, official of the U.S. Department of State and supervisor of defendant Carol Timko, did not act to remedy wrongs after learning about it, and continued the policy and custom under which constitutional violations occurred and manifested  gross negligence in managing subordinates who cause violations. Defendant Susser was personally informed about the ongoing violations committed by his subordinate Carol Timko, he refused to act saying that it was to late. Furthermore he himself knowingly  transmitted false information used by defendant Randa Zagzoug and defendant Philip Morace to violate the plaintiff Constitutional due process right, and deprive the plaintiff of his liberty. Defendant Susser clearly knew or ought reasonably have known that by violating clearly established rules and regulations the plaintiff would continue to be deprived of liberty in violation of the Fifth Amendment to the United States Constitution. He is charged with direct participation and conspiring with and/or aiding and abetting Defendants  Randa Zagzoug and Philip Morace to deprive plaintiff of liberty in violation of the Fifth Amendment to the United States Constitution.

77.      Defendant Philip Morace, Official of the U.S. Department of Justice, as Immigration Judge, according to INA/ACT 101(4) is the subject to supervision and shall perform such duties as the Attorney General shall prescribe. He is responsible for the implementation of the Attorney General directives concerning the handling of classified information according with internal regulation OPPM 98-10 and according to Sec. 103. [8 U.S.C. 1103] (a)(2), concerning the files and records of the service. Defendant did not adhere to this laws and regulations facilitating the disclosure of classified information exposing the plaintiff as a confidential source of information to U.S. Government enhancing the ongoing danger to plaintiff security because of already vulnerable situation created by other defendants. Defendant was aware that defendant Randa zagzoug was

using false information about plaintiff and was abetting her to deprive plaintiff of due process and liberty in violation of the Fifth Amendment to the United States Constitution. Through direct participation and implied agreement with defendant Zagzoug, the defendant conspired to deprive the plaintiff of his liberty and to subject the plaintiff to ongoing mental duress and further enhance the plaintiff insecurity. He was fully aware that the plaintiff was placed in danger as a result of his special relationship with the U.S. Government , and that the plaintiff has a property right and liberty interest because of that relationship, and the U.S. Government has a duty to provide for plaintiff safety because of that special relationship. Instead Defendant Philip Morace was concerned if the conditions in jail are appropriate if the plaintiff would be convicted for espionage on behalf of the United States. And he concluded that they were appropriate according with his decision. This clearly shows that defendant was aware that the plaintiff would be deprived of his liberty as a result of his actions, and because of services performed on behalf of the U.S. Government. This is beyond that a reasonable person would have known that his actions were depriving the plaintiff federally constitutionally protected rights. The defendant envisioned the plaintiff being deprived of his liberty as a result of defendant actions.

78.    Defendant JOHN ASHCROFT is the Attorney General of the United States. In this capacity, Defendant Ashcroft, at the time of the actions complained of herein, had ultimate responsibility for the implementation and enforcement of United States immigration laws. According to Sec. 103. [8 U.S.C. 1103] (a)(2), He shall have control, direction, and supervision of all employees and all the files and records of the service. As an individual, he is charged with failure to remedy wrongs after learning about it, and continued the policy and custom under which constitutional violations occurred, and for gross negligence in managing subordinates who cause violations. On August 5th, 2003 the plaintiff wrote to Attorney General Ashcroft, a certified letter in which the plaintiff provided details about intentional violation of U.S. National Security laws concerning the protection of sources and methods, the improper and illegal handling of classified material and information which resulted in the enhancement of danger to plaintiff as a confidential source of information to U.S. Government. Also defendant Ashcroft was informed about the intentional infliction of emotional distress by the illegal and unconstitutional actions of his subordinates, defendants Zagzouz and Morace. The defendant never responded and did not act to remedy any ongoing violations of the plaintiff clearly established rights and affirmatively placed the plaintiff in danger after the U.S. Government created a special relationship with the plaintiff by asking him to engage in espionage on behalf of the U.S. Government. Defendant knew or ought reasonably to have known that by not acting to remedy wrongs the plaintiff would continue to be deprived of liberty in violation of the Fifth Amendment to the United States Constitution.

79.    Defendant Tom Ridge is the Secretary of Homeland Security. In this capacity, Defendant Ridge is currently responsible for the implementation and enforcement of United States immigration laws. According to Executive Order 13284 of January 23, 2003 The Secretary of Homeland Security, Tom Ridge, shall be considered a "Senior Official of the Intelligence Community" for purposes of Executive Order 12333. As senior official of the Intelligence Community he has a duty to protect the intelligence

sources and methods of the United States from unauthorized disclosure and to report to the Attorney General possible violation of federal criminal laws concerning the sources and methods. As an individual, he is charged with failure to remedy wrongs after learning about it, and continued the policy and custom under which constitutional violations occurred, and for gross negligence in managing subordinates who cause violations. On August 5th, 2003 the plaintiff wrote to Secretary Ridge, a certified letter in which the plaintiff provided details about intentional violation of U.S. National Security laws concerning the protection of sources and methods, the improper and illegal handling of classified material and information which resulted in the enhancement of danger to plaintiff as a confidential source of information to U.S. Government. Also defendant Ridge was informed about the intentional infliction of emotional distress by the illegal and unconstitutional actions of his subordinates, defendant Zagzoug. The defendant never responded and did not act to remedy any ongoing violations of the plaintiff clearly established rights and affirmatively placed the plaintiff in danger after the U.S. Government created a special relationship with the plaintiff by asking him to engage in espionage on behalf of the U.S. Government. Defendant knew or ought reasonably have known that by not acting to remedy wrongs the plaintiff would continue to be deprived of liberty in violation of the Fifth Amendment to the United States Constitution.

## II. EQUAL PROTECTION RIGHT

80.    Defendants also violated Plaintiff's right to equal protection. Defendants has a duty to assist and protect the plaintiff according to "PL-110 program" (50 U.S.C. 403h) used in the past by the Intelligence Community to assist individuals similarly placed as the plaintiff. Defendants have breached this duty.

## III. INJUNCTIVE RELIEF

81.    As a result of defendants' actions, plaintiffs have been irreparably injured and will continue to suffer irreparable injury until defendants cease depriving plaintiff of his fundamental right to liberty and personal security and fulfill their constitutional duty to provide for plaintiffs' basic needs. Plaintiff is without an adequate remedy at law and is entitled to a permanent injunction, as set forth below under Relief.

## IV. DECLARATORY JUDGEMENT

82.    Plaintiff is entitled to a declaratory judgment pursuant to 28 U. S. C. § 2201 as set forth below under Relief.

## V. COMPENSATORY DAMAGES

83.    Plaintiff has suffered consequential economical damages, in amounts to be determined, including but not limited to, amounts for damages caused by the unconstitutional actions of Defendants' arbitrarily and oppressive violation of Plaintiffs' property and liberty rights.

84.     Plaintiff has also suffered damages from severe mental and emotional distress caused by Defendants wrongful and unconstitutional acts.

85.     Plaintiff is entitled to an award of punitive damages in the amount of $25,000,000 ,00 per defendant by reason of Defendants' knowing, malicious and intentional violation of plaintiff's constitutional rights.

86.     There are no alternative remedies available to Plaintiffs for Defendants wrongful and unconstitutional actions.

## RELIEF

## PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF

### INJUNCTIVE RELIEF

87.     A permanent injunction requiring defendant Ashcroft and the DOJ to safeguard all the information about the plaintiff, deemed classified pursuant to laws and regulations, including plaintiff' identity, and to ensure that subordinates without proper security clearance involved in plaintiff immigration proceedings are aware that the disclosure of said information is illegal and against the National Security Laws.

88.     A permanent injunction requiring the defendant Attorney General Ashcroft to cease depriving plaintiff of relief entitled as provided in the past to other individuals (defectors, etc) under 50 U.S.C. Sec 403h also known as PL-110 Program.

89.     A permanent injunction requiring the defendant Secretary Powell to fulfill his constitutional duty to protect plaintiff' personal security and provide for plaintiff' basic needs according to promises made, and to provide the same relief as it was provided in the past to other individuals (defectors, etc) under 50 U.S.C. Sec 403h also known as PL-110 Program.

## DECLARATORY RELIEF.

### A declaratory judgment that:

90.     The Department of Justice failed to provide a constitutionally adequate process for adjudicating plaintiff' protected interests and thereby violated plaintiff' constitutional rights.

91.     The decision of Department of Justice regarding all immigration proceedings including the denial of plaintiff's asylum is null and void.

92.    The Department of State failed to protect plaintiff' constitutional rights and defendant Secretary Powell failed to fulfill his constitutional duty to protect plaintiff' personal security and provide for plaintiff' basic needs according to promises made, and to provide the same relief as it was provided in the past to other individuals (defectors, etc) under 50 U.S.C. Sec 403h also known as PL-110 Program.

## COMPENSATORY RELIEF FOR CONSTITUTIONAL VIOLATIONS

93.    The entry of judgment in favor of Plaintiff and against Defendants for consequential damages and damages for severe emotional distress, in amount of $100,000,000.00 per defendant.

94.    Punitive damages in the amount of $25,000,000.00 per defendant.

95.    Such other relief as is just and proper.

**DATED this 10th day of August, 2004.**

John Doe
P.O.Box 20109
New York, NY 10001-0005

X_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

John Doe,                    )
                             )
        Plaintiff,)          CASE NO. 04-CV-10495NG
                             )
        v.                   )
                             )
Ashcroft et. al,            )
                             )
        Defendants.          )
                             )

## Certificate of Service

I, hereby certify that a copy of the Second Amended Complaint and all the attached
exhibits were mailed on August 11, 2004 by certified U.S. Mail to defendants' counsel
Jeremy Sternberg, Assistant U.S. Attorney at the following address:

Jeremy M. Sternberg
Assistant U.S. Attorney                 Date:  08/11/04
One Courthouse Way
U.S. Courthouse, Suite 9200
Boston, MA 02210


John Doe
P.O.Box 20109
New York, NY 10001-0005

X_____