UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br>       Plaintiff,<br><br>V.<br><br>JOHN ASHCROFT, et al.,<br>       Defendants. | Civil Action No. 04-10495-NG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants hereby submit this Memorandum in Support of their Motion to Dismiss the Plaintiff's Second Amended Complaint. They have moved, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (5) and (6), to dismiss based on lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process, improper venue, and failure to state a claim.

**INTRODUCTION**

Plaintiff has brought an action against Defendants John Ashcroft, Attorney General of the United States, Tom Ridge, Secretary of the Department of Homeland Security ("DHS"), Colin Powell, Secretary of State, Marc Susser, (former) Director of the Office of County Reports and Asylum Affairs (Department of State, Bureau of Democracy, Human Rights and Labor) ("OCRAA"), Carol Timko, (former) Officer of the OCRAA, Marva McAllister, DHS Supervisory Asylum Officer, Randa Zagzoug, DHS Counsel, and Immigration Judge Philip Morace apparently for breaching some confidentiality relating to Plaintiff's alleged role in collecting information on behalf of the United States about a foreign government. Second Amended Complaint, ¶¶2-9. Plaintiff, who had applied for political asylum in the United States but was denied, contends that the alleged breaches of confidentiality somehow violated his constitutional rights. As a remedy for such violations, in addition to monetary relief, Plaintiff

requests that this Court nullify his immigration proceedings and grant him asylum in the United States. For the reasons set forth below, however, the Court should dismiss the Complaint against all of the Defendants.

## ARGUMENT

The standard to be applied when deciding a motion to dismiss is well-established. The court must accept the allegations of the complaint as true, viewing the alleged facts in the light most favorable to the plaintiff. Hughes v. Rowe, 449 U.S. 5, 10 (1980) (per curiam). The complaint may be dismissed only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Harper v. Cserr, 544 F.2d 1121, 1122 (1st Cir. 1976).

**I.   THIS COURT HAS NO JURISDICTION OVER PLAINTIFF'S CLAIMS**

The Complaint relates to perceived wrongs that allegedly occurred during Plaintiff's immigration proceedings concerning his asylum application. Indeed, Plaintiff requests as injunctive and declaratory relief that this Court nullify those immigration proceedings and grant him asylum in the United States, which an immigration judge previously denied. Injunctive or declaratory relief is not the appropriate remedy for those perceived wrongs. In fact, this Court has no jurisdiction or authority to issue the relief Plaintiff requests. See 8 U.S.C. § 1253(f)(1).[1] Congress, however, has prescribed exclusive statutory remedies for aliens who dispute the DHS's denial of their asylum applications. See 8 U.S.C. §§ 1158(d)(5)(A)(iv), 1252(d). Indeed,

---

[1] Section 1252(f)(1) states: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1).

on April 16, 2004, Plaintiff appealed the denial of his asylum application by Immigration Judge Morace (based in New York, New York) to the Board of Immigration Appeals. The Board of Immigration Appeals has not yet rendered a decision concerning Plaintiff's appeal. Plaintiff has not exhausted the administrative remedies available to him, therefore, this Court has no jurisdiction over his claims.[2] See 8 U.S.C. § 1252(d).

## II.     THIS COURT LACKS JURISDICTION OVER THE DEFENDANTS.

Plaintiff has not, and cannot, show any basis for exercising jurisdiction over these defendants in their individual capacities. See Glaros v. Perse, 628 F.2d 679 (1st Cir. 1980); Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981). All of the Defendants reside and work outside Massachusetts; no allegation has been made that any of them took any steps against Plaintiff within the District of Massachusetts, or otherwise had the necessary minimum contacts to satisfy the Massachusetts long-arm jurisdiction statute. See generally Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (due process requires that defendant purposely establish contact with the forum state; fortuitous or attenuated contact insufficient).

To subject a non-resident to jurisdiction, due process requires that the defendant have minimum contacts with the forum state of such a character that maintaining the lawsuit does not offend "traditional concepts of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "Minimum contacts" signifies that there has been "some act by which the defendant purposefully [availed himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Hanson

---

[2] Furthermore, section 1158, which regulates asylum application procedure, states: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7).

v. Denckla, 357 U.S. 235, 253 (1958); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Plaintiff has made no allegations of any such purposeful contact with this state; therefore, all counts as to the Defendants should be dismissed.[3]

## III.   VENUE DOES NOT LIE IN THIS DISTRICT

As stated above, none of the Defendants reside in Massachusetts. Equally clear is that none of the wrongful conduct alleged took place in Massachusetts. Because this is a case against officers of the United States, the venue provisions of 28 U.S.C. § 1391(b) apply. That section provides that such cases may only be brought in a judicial district where: (1) a defendant resides, if all defendants reside in the same state; (2) a *substantial* part of the events or omissions giving rise to the claim occurred; or (3) a defendant may be found, if there is no district where the action could otherwise be brought. 28 U.S.C. § 1391(b). The Defendants obviously live in districts other than Massachusetts, and there is a district in the New York area in which the core events at issue – i.e., Plaintiff's immigration proceedings – took place. Should the Court find that Plaintiff's claims against the officers primarily are for equitable relief, the provisions of 28

---

[3] This Court also lacks jurisdiction over the individual defendants. There does not appear to have been service of process on them individually, as required in a Bivens case. Where money damages are sought through a Bivens claim, as here, personal service is necessary to obtain jurisdiction over a defendant in his/her capacity as an individual. Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987); Pollack v. Meese, 737 F. Supp. 663 (D.D.C. 1990). The requirements of service are jurisdictional in nature; absent service or a proper waiver by the defendant, a court cannot adjudicate the rights of the parties. See Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444-445 (1946). Service upon the United States is insufficient to hold an individual employee of the United States personally liable for acts, whether taken within, or outside of, the scope of his employment. Ecclesiastical Order of The Ism of Am, Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir. 1988) (service on Department of Justice insufficient to bring IRS agents within jurisdiction of court on constitutional violation claims). Moreover, neither actual knowledge of the action by a defendant, nor coming reasonably close to serving a defendant, nor equities that favor the plaintiff, excuse a failure to strictly comply with the requirement of personal service upon a defendant who is expected to be held individually liable for acts alleged in the complaint. Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 28 (1st Cir. 1988) (actual notice and simply naming the person in a caption is insufficient to subject defendant to jurisdiction of a district court). Furthermore, absence of prejudice to the defendant is of no aid to a plaintiff who has failed to comply with the requirements of service of process. Quann v. Whitegate-Edgewater, 112 F.R.D. 649, 660 (D. Md. 1986). Accordingly, this Court must dismiss the Complaint for lack of jurisdiction over the Defendants.

U.S.C. § 1391(e) apply. See Stafford v. Briggs, 444 U.S. 527, 544-545 (1980). That section provides that such a case must be brought in a judicial district where: (1) a defendant resides; (2) a *substantial* part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides. 28 U.S.C. § 1391(e). The Plaintiff, apparently residing in New York, cannot establish any of these requirements for venue. Therefore, venue is improper in this judicial district.

**IV. THE COURT MUST DISMISS SOME OF THE CLAIMS BECAUSE PLAINTIFF FAILED TO BRING SUIT WITHIN THE APPLICABLE STATUTE OF LIMITATIONS.**

Plaintiff's claims against Defendants McAllister, Susser, Timko and Zagzoug are barred by the applicable statute of limitations. Furthermore, because Plaintiff's claims against Defendants Powell, Ashcroft and Ridge are based on the conduct of Defendants McAllister, Susser, Timko and Zagzoug, those claims are also barred by the applicable statute of limitations.

Plaintiff's allegations regarding Defendant McAllister, DHS Supervisory Asylum Officer, concern purported conduct from 1992. Second Amended Complaint, ¶¶ 38, 39. His allegations regarding Defendants Susser, Director of the OCRAA, and Timko, Officer of the OCRAA, are based on purported conduct from 1999. Id., ¶¶ 54, 56. Plaintiff's claims concerning Defendant Zagzoug, DHS Counsel, are based on alleged conduct from 2000. Id., ¶ 65. Plaintiff did not file the initial Complaint in this action until March 11, 2004.

In order to determine the applicable statute of limitations in a Bivens-type action, the Court must look to the law of the state in which the alleged acts occurred, as it pertains to personal injury actions. Owens v. Okure, 488 U.S. 235, 236 (1989). In Massachusetts, the period of limitations governing general personal injury actions, and therefore constitutional tort

actions, is 3 years. Mass. Gen. L. ch. 260 § 2A; See Roberts v. Murphy, 684 F. Supp. 759, 761 (D. Mass. 1988). Federal law determines when a cause of action for constitutional violations accrues, therefore, such claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Norco Constr., Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir. 1986).

The Complaint indicates that Plaintiff knew of the perceived wrongs when they allegedly occurred. See Second Amended Complaint, ¶¶ 41-49, 56. Accordingly, if, indeed, there were any truth to these allegations, failure of the Plaintiff to file suit within three years of his demonstrated knowledge of the alleged injury bars suit. The Court should, therefore, dismiss the action with respect to Defendants Powell, Ashcroft, Ridge, McAllister, Susser, Timko and Zagzoug.

### V. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

#### A. None Of The Statutes Relied On By Plaintiff Allow For Private Suit Or Relief.

Plaintiff alleges that Defendants Powell, Ashcroft and Ridge somehow violated his equal protection and due process rights by failing to perform their official duties. He also claims that Defendants McAllister, Susser, Timko and Zagzoug violated those rights by leaking confidential information to third parties that Plaintiff covertly collected information for United States. However, the statutes concerning the powers and duties of the Attorney General, the Secretary of Homeland Security, and the Secretary of State do not allow the Plaintiff to bring an action against the holders of those positions because they allegedly failed to perform their duties. See,

e.g., 8 U.S.C. § 1103.  Similarly, the various statutes, regulations, and executive orders cited by the Plaintiff, which describe how the government should handle confidential intelligence, do not allow for private causes of action.  See, e.g., Executive Order 12968 § 7.2(e) (regarding access to classified information, stating that order "does not create any right to ... judicial review, or any other right or benefit or trust responsibility ... enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.").[4]  Accordingly, the Plaintiff's claims fail as a matter of law.

    **B.**    **Plaintiff Has Not Been Improperly Denied Any Rights Under Federal Law.**

        **1.**    **Plaintiff's Due Process Guarantees Do Not Stem From The United States Constitution But Rather From The Procedures Established By Congress.**

Based on the Complaint, Plaintiff appears to be an unadmitted alien.  Therefore, he erroneously asserts claims under the Fifth Amendment for violation of due process.  Indeed, the power to control the admission of foreigners and aliens is an inherent attribute of national sovereignty and is "essential to self-preservation."  Ekiu v. United States, 142 U.S. 651, 659 (1892); see also Fong Yue Ting v. United States, 149 U.S. 698, 707-711(1893); Guzman v. Tippy, 130 F. 3d 64, 65 (2nd Cir. 1997) ("A sovereign state has a right to exclude aliens. Congress maintains the power to enforce this right, having virtually absolute authority over the admission of aliens.").  The political branches of our government have complete authority to establish and implement substantive and procedural rules governing the admission and deportation of aliens.  See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 210 (1953)

---

[4] As discussed below, these statutes, regulations and executive orders do not waive sovereign immunity (see infra Section V(C).

("[c]ourts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950) (the power to exclude is a legislative and an "inherent executive" power); Jean v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984), aff'd, 472 U.S. 846 (1985).

"Entry" into the United States remains the yardstick for measuring what rights are bestowed upon an alien. See Landon v. Plasencia , 459 U.S. 21, 26 (1982); Zadvydas v. Davis, 533 U.S. 679, 693 (2001) ("The distinction between an alien who has affected an entry into the United States and one who has never entered runs throughout immigration law."). In this regard, the law recognizes that even if an alien is geographically within U.S. borders, he can be deemed excluded and not have accomplished a cognizable entry in this country. See, e.g., Gisbert v. Attorney General, 988 F. 2d 1437, 1440 (5th Cir. 1993). Indeed, aliens who have reached our border, but have not been admitted formally for entry into the United States are deemed "excludable" or "unadmitted" aliens and are considered as if they were stopped at the border or stand at the threshold of entry. Mezei, 345 U.S. at 216; Gisbert, 988 F. 2d at 1440; Borrero v. Aljets, 325 F.3d 1003, 1007 (8th Cir. 2003); Jean, 727 F. 2d at 961 n.1 (aliens who have reached our border but have not been admitted formally to the United States are described as "excludable" or "unadmitted" aliens. On the other hand, aliens who have succeeded in effectuating an "entry in contemplation of the law" are described as "resident" or "deportable" aliens).

The United States Supreme Court has rejected claims that the detention of an unadmitted alien has any effect on the alien's status under the law. See Leng May Ma v. Barber, 357 U.S.

185, 188 (1958); Benitez v. Wallis, 337 F.3d 1289, 1296 (11th Cir. 2003), cert. denied, __ U.S. __, 124 S. Ct. 1143 (2004) (there is a "fundamental difference in the legal status of (1) unadmitted aliens and (2) resident aliens who have effected 'entry' into the United States, whether illegally or legally."). It is understood, therefore, that when an alien stands on the threshold of initial entry, he stands on a different footing than other admitted aliens, enjoying only those procedures authorized by Congress. Mezei, 345 U.S. at 212; Knauff, 338 U.S. at 544 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."). Stated differently, as an unadmitted alien, due process guarantees do not stem from the Fifth Amendment, but rather are determined by the procedures established by Congress. See Kwong Hai Chew v. Colding, 344 U.S. 590, 600 (1953) ("'excludable' aliens ... are not within the protection of the Fifth Amendment"). Here, Congress has established procedures for asylum applications under 8 U.S.C. § 1158. Plaintiff applied for asylum under that statute and received a hearing before an immigration judge as required by the statute. Therefore, Plaintiff was not denied any due process rights under the Fifth Amendment.

### 2. Plaintiff's Equal Protection Claim Fails.

Plaintiff also erroneously claims that he was denied equal protection of the law because individuals similarly situated to him were grant asylum and he was not. Second Amended Complaint, ¶ 80. However, he fails to allege that the government enacted a statute or regulation that made improper classifications concerning asylum applicants, which resulted in him receiving different treatment from other similarly situated asylum applicants. See, e.g., Bolling v. Sharpe, 347 U.S. 497, 499-500 (1954). As a result, the Court must dismiss the claim.

### C.    Plaintiff's Claims Against Defendants Powell, Ashcroft, And Ridge Are Barred By Sovereign Immunity.

Plaintiff sued Defendants Powell, Ashcroft and Ridge in their official capacities, and thus those claims are barred by sovereign immunity. It is axiomatic that the United States is immune from suit unless it has expressly consented to be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). The United States has not consented to be sued for monetary damages under the Constitution, and, therefore, the doctrine of sovereign immunity bars such actions. See FDIC v. Meyer, 510 U.S. 471, 485-486 (1994); Am. Assoc. of Commodity Traders v. Dep't of Treasury, 598 F.2d 1233, 1235 (1st Cir. 1979). Also, none of the statutes relied on by the Plaintiff expressly waive sovereign immunity. See, 8 U.S.C. § 1103; 18 U.S.C. §§ 641, 793, 794, 798, 952; 50 U.S.C. §§ 403h, 413(a). It is well established that a suit against a government official acting in his official capacity shall be deemed to be a suit against the United States "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, . . . or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Dugan v. Rank, 372 U.S. 609, 620 (1963), quoting Land v. Dollar, 330 U.S. 731, 738 (1947), and Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704 (1947). Limited exceptions to this principle have been recognized, but they authorize only injunctive relief against a federal official acting in his official capacity.[5] Monetary damages are not authorized. Dugan, 372 U.S. at 620. Accordingly, the Court should dismiss the claims against Defendants Powell, Ashcroft and Ridge in their official capacities.

---

[5] The only exceptions to the principle stated in Dugan are: (1) where the disputed action by the government official is beyond his statutory powers; and (2) where even though the action is within the official's statutory authority, the powers themselves or the manner in which they are exercised are constitutionally void, in which case the action can be made the basis of a suit for injunctive relief against the officer as an individual. Dugan, 372 U.S. at 621-622.

### D.      Respondeat Superior Cannot Form The Basis Of Bivens Liability.

Furthermore, it is clear from the Complaint that Defendants Powell, Ashcroft and Ridge have no connection with the Plaintiff, or the events alleged in the Complaint, other than by the fact that they supervise other Defendants. It is well established that supervisors cannot be held liable in a Bivens claim on the sole basis of their supervision of others. See, e.g., Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). Accord McKay v. Hammock, 730 F.2d 1367, 1374 (10th Cir. 1984); Martin v. Malhoyt, 830 F.2d 237, 257 (D.C. Cir. 1987).

For example, Plaintiff claims that Defendant Powell failed to stop subordinates from disclosing Plaintiff's "confidential relationship" with the United States. Second Amended Complaint, ¶ 72. The only basis for Defendant Powell's liability is under the doctrine of respondeat superior, which is inapplicable to Bivens. See, e.g., Behre v. Thomas, 665 F. Supp. 89 (D. N.H. 1987), aff'd, 843 F.2d 1385 (1988) (mere supervisory position or allegation that defendant was somehow vaguely connected insufficient basis for liability). Similarly, Defendants Ashcroft's and Ridge's only alleged connection to the events in the Complaint arises from their supervision of others who dealt with Plaintiff. Accordingly, all of the Bivens claims against Defendants Powell, Ashcroft and Ridge must be dismissed.

### E. Defendants Morace and Zagzoug Are Absolutely Immune From Suit.[6]

#### 1. Immigration Judge Morace is immune from suit.

Plaintiff claims that Immigration Judge Morace improperly allowed Defendant Zagzoug to introduce purportedly classified information and allegedly false information during the proceedings on Plaintiff's asylum application. Second Amended Complaint, ¶ 77. He alleges that he was deprived of his due process rights and, thus, asserts a Bivens claim against Judge Morace. Id. Judges, however, performing judicial functions within their jurisdictions are granted absolute immunity. See Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).[7] Courts have extended the traditional immunity accorded judges to include officials who, although not strictly judges, "perform functions closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985). Those officials entitled to this quasi-judicial immunity include federal hearing examiners and administrative law judges. See Butz v. Economou, 438 U.S. 478, 514 (1978). "In order for quasi-judicial officials to be granted absolute immunity, their acts must reflect the essence of judicial decision-making and involve discretion of a judicial nature." McMillan v. Svetanoff, 793 F.2d 149, 151 (7th Cir.), cert. denied, 479 U.S. 985 (1986). Other

---

[6]The Court, in a Bivens action, is charged with the responsibility of making a threshold determination as to whether or not the federal defendants are entitled to immunity from suit under the circumstances pleaded. Harlow v. Fitzgerald, 457 U.S. 800 (1982); See also Krohn v. United States, 742 F.2d 24, 27 (1st Cir. 1984) ("one of elements of the immunity is freedom from having to stand trial"). This determination must be made at the earliest possible stage of the litigation, Hunter v. Bryant, 502 U.S. 224, 227 (1991), because the intended purpose of the immunity is to spare the defendant official from becoming embroiled in unnecessary litigation, including discovery. Mitchell v. Forsyth, 472 U.S. 511, 525-26 (1985); Barr v. Matteo, 360 U.S. 564, 571 (1959).

[7]Judges are protected by absolute immunity for judicial acts except when they act in the clear absence of jurisdiction. A judge is immune from suit even when the action he took "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump, 435 U.S. at 356-57 (citation omitted). In short, a judge is immune from suit for all acts that (i) are judicial in nature and (ii) for which there is not a clear absence of all jurisdiction. See Mireles v. Waco, 502 U.S. 9, 12-13 (1991) (per curiam); Christensen v. Ward, 916 F.2d 1462 (10th Cir.), cert. denied, 498 U.S. 999 (1990).

factors to be considered include the need to protect the official from unwarranted suits, and the existence of safeguards to remedy constitutional errors.  Cleavinger, 474 U.S. at 202.

Under this analysis, the role of an immigration judge in asylum proceedings is sufficiently judge-like to require the protection of absolute, quasi-judicial immunity.  See Hernandez-Ortez v. Godinez, No. 88C5925, 1988 U.S. Dist. LEXIS 13454, at *4 (N.D. Ill. Nov. 30, 1988); see also Lartey v. Dep't of Justice, 790 F. Supp. 130, 133 (W.D. La. 1992) (immigration judge protected by absolute immunity for judicial acts).  Asylum hearings are adversarial in nature and require the immigration judge to make determinations analogous to those made by a judge.  See Hernandez-Ortez, 1988 U.S. Dist. LEXIS 13454, at *4.  "An immigration judge also runs the risk of being subjected to suit by litigants dissatisfied with a decision.  The serious consequences of a deportation order may arouse a deep emotional response from an individual forced to leave the United States.  The rulings of an immigration judge, however, are not final.  They are reviewable both by the Board of Immigration Appeals and the United States Court of Appeals."  Id., citing Bothyo v. Moyer, 772 F.2d 353, 355 n.1 (7th Cir. 1985) and Nasser v. INS, 744 F.2d 542, 544-45 (6th Cir. 1984).  Plaintiff's claims pertain to the decisions Judge Morace made during the immigration proceedings that, even if true, involve the types of actions that immigration judges regularly perform.  Accordingly, the Court should conclude that Judge Morace is immune from suit for his decisions made during the immigration proceedings, including his denial of Plaintiff's application for asylum, and dismiss all claims against him.

### 2. Absolute Immunity of Counsel for DHS

Plaintiff also claims that Defendant Zagzoug, Assistant District Counsel for DHS who opposed Plaintiff's application for asylum, acted inappropriately during the immigration proceedings and, thus, violated his rights under the Fifth Amendment. Second Amended Complaint, ¶ 65. As counsel for INS, however, Defendant Zagzoug absolutely immune from suits based upon alleged acts performed in the course of an immigration proceeding. See Fares v. INS, 29 F. Supp. 2d 259, 262-263 (W.D.N.C. 1998), aff'd, 11 Fed. Appx. 137, 2001 WL 417647 (4th Cir. Apr. 24, 2001) (holding INS attorneys absolutely immune from suits arising from immigration proceedings). Indeed, "absolute immunity is extended to government officials performing certain functions analogous to those of a prosecutor, regardless of whether those duties are performed in the course of civil, criminal, or agency proceedings." Id., citing Butz, 438 U.S. at 508, 515; Schrob v. Catterson, 948 F.2d 1402, 1411 (3d Cir. 1991); Fry v. Melaragno, 939 F.2d 832, 837 (9th Cir. 1991). Therefore, all constitutional claims against Defendant Zagzoug should be dismissed as well.

### F. Defendants Susser, Timko, and McAllister Have Qualified Immunity From Suit.

Plaintiff's claims against Defendants Susser, Director of County Reports and Asylum Affairs, Timko, Officer of County Reports and Asylum Affairs, and McAllister, DHS Supervisory Asylum Officer, also fail because those defendants have a qualified immunity against suits arising from their official functions. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Castro-Aponte v. Ligia-Rubero, 953 F.2d 1429, 1430 (1st Cir. 1992).[8]

According to the First Circuit Court of Appeals, the two analytical components of the qualified immunity determination are, first, whether there was a "clearly established" constitutional right at the time of the alleged violation, and, second, whether a reasonable official in the same circumstances should have understood that the challenged conduct violated that established right. Burns v. Loranger, 907 F.2d 233, 235-36 (1st Cir. 1990); Borucki v. Ryan, 827 F.2d 836, 838 (1st Cir. 1987) (whether official prevails depends upon objective reasonableness of conduct, measured by reference to clearly established law).

A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." See Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984). This level of specificity is required to preclude the negation of the qualified immunity doctrine "simply by alleging violation of extremely abstract rights." Anderson v. Creighton, 483 U.S. 635, 639 (1987).

In ruling on the issue of qualified immunity, the Court is required to analyze the facts with an eye to determining whether "in light of pre-existing law" unlawfulness of the alleged actions is apparent. Carey v. City of Fall River et al., 708 F. Supp. 431, 434 (D. Mass. 1988), aff'd, 870 F.2d 40 (1st Cir. 1989), citing Anderson, 483 U.S. at 640. The rights allegedly violated must have been "sufficiently clear that a reasonable officer would understand that what

---

[8] See also Nereida-Gonzalez v. Tirado-Delgado et al., 990 F.2d 701, 704-705 (1st Cir. 1993); Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992); Fisichelli v. Town of Methuen, 653 F. Supp. 1494, 1503 (D. Mass. 1987).

he is doing violates that right." Anderson, 483 U.S. at 640.[9]

In order to withstand the federal Defendants' assertion of immunity, Plaintiff's pleading must not only allege the bases for recovery, with particularity, but it must also include "detailed facts supporting the contention that the plea of immunity cannot be sustained." Nieto v. San Perlita Indep. School Distr., 894 F.2d 174, 178 (5th Cir. 1990), aff'd after reh'g, 963 F.2d 370 (5th Cir. 1992); Nuclear Transp. & Storage, Inc. v. United States, 890 F.2d 1348, 1355 (6th Cir. 1989), cert. denied, 494 U.S. 1079 (1990); Elliot v. Perez, 751 F.2d 1472, 1482 (5th Cir. 1985). It is the plaintiff's burden to offer evidence which is sufficient to overcome the general rule of qualified immunity. Castro-Aponte, 953 F.2d at 1430 (1st Cir. 1992).

The subjective good faith of the actor is not at issue. Carey, 708 F. Supp. at 434. Therefore, any attempt to interject discussions of the defendant's purpose or intent is irrelevant to the issue of qualified immunity. The relevant inquiry is the "objective legal reasonableness of an official's acts," not the official's actual, subjective state of mind. Harlow, 457 U.S. at 819. The standard provides "ample room for mistaken judgments," Malley v. Briggs, 475 U.S. 335, 343 (1986), by protecting "all but the plainly incompetent or those who knowingly violate the law." Id. at 341; Hunter v. Bryant, 502 U.S. 224, 112 S. Ct. 534, 537 (1991).

As discussed above (supra Section V(A)), none of the statutes, regulations, or executive orders relied upon by the Plaintiff provide him "clearly established" constitutional rights. See Burns, 907 F.2d at 235-236. Further, Plaintiff has failed to plead the alleged constitutional violations with sufficient particularity.

---

[9]Accord Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992); Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 561 (1st Cir.), cert. denied, 488 U.S. 823 (1988).

According to the First Circuit Court of Appeals, the valid presentment of a constitutional violation requires more than the mere assertion of tortious actions. It requires "an ability to show that defendants' conduct was 'so egregious as to subject the individual to a deprivation of constitutional dimension.'" Morales v. Ramirez, 906 F.2d 784, 788 (1st Cir. 1990), quoting Torres v. Superintendent of Police, 893 F.2d 404, 409 (1st Cir. 1990). In order to meet the constitutional threshold, the actions must "substantively 'shock the conscience.'" Id. A close examination of the Complaint shows that Plaintiff has not alleged facts which would set aside the presumption of qualified immunity for Defendants Susser, Timko and McAllister. Accordingly, the Court should dismiss the claims against them.

## CONCLUSION

Accordingly, for the reasons articulated above, the Complaint should be dismissed.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:    /s/ Damian W. Wilmot
        DAMIAN W. WILMOT
        Assistant U.S. Attorney
        John Joseph Moakley Federal Courthouse
        One Courthouse Way, Suite 9200
        Boston, MA   02210
        (617) 748-3100

Dated: September 24, 2004

## CERTIFICATION UNDER L.R. 7.1

It is the undersigned's position that because the Plaintiff is *pro se* a 7.1 conference is unnecessary, as that Rule pertains to "counsel."

                                                 /s/ Damian W. Wilmot
                                                 DAMIAN W. WILMOT
                                                 Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I certify that on September 24, 2004, I caused a copy of the foregoing Memorandum in Support of Defendants' Motion to be served on Plaintiff by first class mail, postage pre-paid to John Doe, P.O. Box 20109, New York, NY 10001-0005.

                                                 /s/ Damian W. Wilmot
                                                 DAMIAN W. WILMOT
                                                 Assistant U.S. Attorney