UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*FILED
CLERKS OFFICE*

*2004 OCT -7 A 11: 19*

*U.S. DISTRICT COURT
DISTRICT OF MASS.*

| | |
|---|---|
| John Doe, | ) |
| Plaintiff, | ) |
| v. | ) |
| Ashcroft et. al, | ) |
| Defendants. | ) |

CASE NO. 04-CV-10495NG

## <u>ANSWER IN OPPOSITION TO DEFENDANTS'MOTION TO DISMISS.</u>

### INTRODUCTION

On August 20, 2004, this Court entered an order directing Defendants'counsel to respond to Plaintiff's Second Amended Complaint by August 27, 2004, and specifically to "address the facts alleged in the amended complaint."

On August 23, 2004, Defendants sought an extension of time until September 24, 2004 to file the response. Among other reasons for seeking an extension were the Defendants' counsel need to address the factual allegations regarding Plaintiff's relationship with the United States and the allegations regarding the conduct of defendants Carol Timko, Marc Susser, Marva McAllister, Randa Zagzoug and Philip Morace, during Plaintiff's asylum proceedings.

It is clear that Defendants' counsel did not address the facts or the conduct of defendants Carol Timko, Marc Susser, Marva McAllister, Randa Zagzoug and Philip Morace during Plaintiff's asylum proceedings. Ignoring the facts, in his motion to

dismiss, Defendants' counsel wrongly argue in his motion to dismiss, that plaintiff asked this court to grant him asylum, and is invoking a host of immunities in order to profit from their own wrongdoings which are detrimental not only to plaintiff but to U.S. National Security.

Also Defendants' counsel ignores the Statutory duties of Defendant Powell as Secretary of State and Senior Member of the Intelligence Community, Defendant Ridge as Secretary of Homeland Security and Senior Member of the Intelligence Community and Defendant Ashcroft as Attorney General. By ignoring their Statutory duties and the fact that Defendants were individually informed by certified letters of intent to sue, on August 5, 2003, ¶ 69 Exh.10,11,12, Defendants' counsel wrongly argue that there was no connection between Plaintiff and Defendants.

Defendants Powell as Secretary of State, Ridge as Secretary of Homeland Security and Ashcroft as Attorney General are directly responsible for the implementation of PL-110 Program (50 U.S.C. Section 403h), once the relation was compromised. It is their own responsibility to implement it, not their subordinates.

Also Defendants Powell and Ridge as Seniors Members of the Intelligence Community had the exclusive duty to protect the sources and methods. E.O.12333, E.O. 13284. ¶¶ 72, 79.

It is clear from the second amended complained that the Plaintiff asserts violations of his due process rights based on his special relationship with the U.S. Government and the unlawful conduct during the asylum proceedings by defendants Carol Timko, Marc Susser, Marva McAllister, Randa Zagzoug and Philip Morace, regardless of the asylum decision. ¶¶ 88,89. Plaintiff seeks to require defendants Powell,

Ridge and Ashcroft to cease depriving plaintiff of relief entitled under 50 U.S.C. Section 403h, also known as PL-110 Program used by the Intelligence Community. Assistance under PL-110 is not asylum. Defendants' counsel make no reference to PL-110 Program, incorrectly arguing that the plaintiff asked this court to grant him asylum. Therefore, Defendants' counsel argument that the plaintiff asked this court to grant him asylum is invalid and Defendants' motion to dismiss, based on this invalid argument, should be denied.

Analyzing the facts described in the amended complained and the exhibits attached, this case has the following issues at its core:

1. The U.S. Goverment failed to protect plaintiff after the relation was compromised ¶¶ 21-35.

2. Department of State intended to hide the failure, initially by abandoning the plaintiff after the relation was clearly compromised at the Intelligence Agencies level ¶ 25.

3. Department of State directed the plaintiff to the wrong forum (asylum proceedings) ¶¶ 33,34, Exh.4. in order to hide Plaintiff's relation with U.S. Government and to avoid the implementation of PL110-Program.

4. Department of State misled and deceived Plaintiff by telling Plaintiff that officials of the Department of State, Lumley, Etelamaki, McGruder and later Deering with two subordinates were acting behind the scenes to assist plaintiff according with promises made. Their real intent was to maintain Plaintiff in the wrong forum and continue to hide his relation with U.S.

Goverment. To accomplish this they allowed defendants Timko and Susser to send false information ,Exhibit 9, in order to meet the technicalities of a trivial asylum case, and the relation between Plaintiff and the U.S. Government.

5.    Defendands McAllister, Zagzoug and Morace fully cooperated and used the false information to build a trivial asylum case, hide the relation between Plaintiff and U.S. Government and assisted the Department of state to maintain Plaintiff case in the wrong forum. Defendant Susser and Timko as officers of the Department of State submitted the false information, Exhibit 9,   which defendant, Zagzoug and Morace used  to meet the technicalities of the INS-DOJ asylum proceedings and delay and maintain plaintiff in the wrong forum.

6.    Plaintiff realized that he was misled and deceived when Mark S. Etelamaki told plaintiff after years of deceiving that he can not confirm or deny Plaintiff's relation with U.S. Government . This was just before Mr. Etelamaki was convicted and now is serving a jail sentence. Plaintiff contacted his replacement , Walter Deering, who told plaintiff that he also can not deny or confirm Plaintiff's relation with U.S. Government.

# PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS

¶ 21 and exhibits 1 and 7 attached to second amended complaint clearly establishes that a special relationship between the Plaintiff and the U.S. Department of

4

State existed. Exhibit 7, also, clearly shows that the relation was initiated by the U.S. Department of State.

¶¶23 -35 clearly describes the failure of the U.S. Department of State to protect plaintiff from deprivation of liberty and affirmatively placing him in danger after the relation was clearly compromised.

U.S. Government clearly violated Plaintiff's substantive due process right by creating a special relationship with plaintiff and then failing to provide for his basic needs and protect him from deprivations of liberty, or by affirmatively placing him in danger L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992).

¶ 69 clearly describes Plaintiff's attempt to resolve this matter administratively by sending letters of intent to sue on August 5th 2003 to defendants Ashcroft , Powell, and Ridge. Defendants never answered and the six months period expired before the plaintiff filed this civil action.

Defendants Powel, Ashcroft and Ridge had a duty to assist and protect the plaintiff, when the relation was compromised, according to "PL-110 program" (50 U.S.C. 403h) used by the Intelligence Community to assist individuals similarly placed as the plaintiff. See, e.g., Federal Government's Handling of Soviet and Communist Bloc Defectors: Hearing Before the Permanent Subcomm. on Governmental Affairs, U.S. Senate, 100th Cong., 100-02, 174-75 (1987). According with congressional testimony of Lt. General Williams , former Director of the Defense Intelligence Agency, also part of the Intelligence Community, under "PL-110 program" the Defendants are required by law to provide plaintiff with financial and other assistance and to ensure his personal security.

Also as described at ¶ 21 in the amended complaint and supported by exhibit 1, it was inside the US embassy when Plaintiff was promised protection in exchange for services performed, Plaintiff's property interest is based not only on the regulations, but also on promises made to him and on the surrounding circumstances. A plaintiff property right may exist if words, conduct, or circumstances indicate mutually explicit understanding between the parties. See Perry v. Sindermann, 408 U.S. 593, 600-01(1972). Because plaintiff can sustain a property right claim under Sinderman, defendants' motion to dismiss for failure to state a claim should be denied.

¶¶ 23,24,25,26 Plaintiff describes how after a meeting inside the US Embassy the plaintiff was physically intercepted by that country intelligence officers, and identified the plaintiff as a source of information to US Government. Defendants failed to act when reported and left the plaintiff with no choice but to return to his native country where he would be put at risk and in permanent danger because of services provided to U.S. Government. Because defendants created a special relationship with the Plaintiff, Defendants have a constitutional duty to protect plaintiff's fundamental right to personal security and to provide for plaintiff's basic needs. Defendants have breached this duty.

Because plaintiff was recognized by foreign intelligence officers, and as it was in the past, he would be harassed in the future because of his relation with U.S. Government. This directly implicates plaintiff's fundamental liberty interests. See. Kallstrom v. City of Columbus, 136 F.3D 1055, 1062(6th Cir. 1998) (individuals' "interest in preserving their lives, as well as preserving their personal security and bodily integrity" constitutes a "fundamental liberty interest". In Deshaney v. Winnebago County Deparment of Social Services, 489 U.S.189, 199-200 (1989), the Supreme Court held

that when the government creates a special relationship with a person, the Substantive component of the Due Process Clause obligates the government to provide for that person's basic needs and to protect him from deprivation of liberty. Therefore a claim that the Government violated the plaintiff Substantive due process right is established and the defendants' motion to dismiss for failure to state a claim should be denied.

It is clear from the second amended complaint that plaintiff have been deprived of his most fundamental liberty interests, including his ability to provide for his basic needs and his personal safety. Plaintiff sacrificed his personal relationships, career and education based on promises inside the U.S. Embassy, and now defendants actions or inaction prevents plaintiff to "engage in common occupations of life" which are "essential to the orderly pursuit of happiness by free men". Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67L. Ed. 1042 (1923). As the Court recognized in Meyer, these activities and occupations are encompassed by the Constitution's liberty protection.

Also the plaintiff was denied the Equal Protection Clause right because unless other individuals who performed similarly services on behalf of the Government (defectors etc.), the plaintiff was denied assistance under the same PL-110 Program (50U.S.C 403h). Equal Protection requires that "all persons similarly circumstanced shall be treated alike". Plyler v. Doe , 457 U.S.202,216(1982). It is also public knowledge that persons as plaintiff who provided similarly services on behalf of the U.S. Government  are provided permanent residency in the United States along with other compensation for their services. See, e.g., Federal Government's Handling of Soviet and Communist Bloc Defectors: Hearing Before the Permanent Subcomm. on Governmental Affairs, U.S. Senate, 100th Cong., 100-02, 174-75 (1987) (describing support under PL-

110 Program). Therefore a claim that the Defendants violated the plaintiff Equal Protection right is established and the defendants' motion to dismiss should be denied.

¶¶ 33 -68 and Exhibits 5,7,8,13 describes how Department of state deceived plaintiff and directed him to the wrong forum, (asylum proceeding), ¶¶ 33, 34 and Exhibit 4 , with the clear intent to create a trivial asylum story. ¶¶ 37-40 and Exhibit 5 shows how defendant McAllister, disclosed plaintiff relation with U.S. Government for the first time outside the Intelligence Community, creating an irreversible danger to plaintiff. Defendants Zagzoug and Morace further disclosed confidential information concerning plaintiffs relation with U.S. Government (Exhibits 7,8,13), affirmatively placing the plaintiff in danger. Defendants Timko and Susser knowingly sent false information, Exhibit 9, helping other defendants to engage in misconduct detrimental to plaintiff liberty. Defendants McAllister, Zagzoug and Morace by their actions clearly compromised plaintiff safety and liberty. Substantive Due Process violations occur when the state impermissibly deprives an individual of an interest so fundamental as liberty. Wood v. Ostrander, 879 F.2d 583, 589 (9 th Cir. 1989), Daniels v. Williams, 474 U.S. 327, 330-32(1986)).


## VENUE


Venue is proper under 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred within this judicial district.

A substantial part of the events occurred in Boston , Massachusetts, ¶¶ 33 – 40, exhibits 4 and 5. Plaintiff was directed to the wrong forum in Boston with direction from the Headquarters, Exhibit 4.

It was in Boston when defendant McAllister, disclosed plaintiff relation with U.S. Government for the first time outside the Intelligence Community creating an irreversible danger to Plaintiff. The Non-U.S. Government agency unauthorized to receive confidential U.S. Government information, to which Defendant McAllister disclosed, it is located in Boston as the Exhibit 5 shows. Also witnesses mentioned at ¶¶37,40 are all located in Boston Massachusetts.


## IMMUNITIES


The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity " `provides ample support to all but the plainly incompetent or those who knowingly violate the law.' " Burns v. Reed, 500 U.S. 478, 494-95 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Defendants  Powell, Ascroft and Ridge violated clearly established law 50 U.S.C. Sec.403h (PL-110), which is regularly and exclusively used by the Heads of Departments, Senior Officials of Intelligence Community. See, e.g., Federal Government's Handling of Soviet and Communist Bloc Defectors: Hearing Before the

Permanent Subcomm. on Governmental Affairs, U.S. Senate, 100th Cong., 100-02, 174-75 (1987). Their duties as Senior Members of Intelligence Community, to protect the sources and methods is clearly established law.

Also Defendants violated Plaintiff's Substantive due process right to liberty , which is recognized as a clearly established right by the U.S. Supreme Court.

Defendants knew that by not acting plaintiff would be deprived of his fundamental right to liberty. Their acts were deliberate and reckless with total disregard to plaintiff basic needs to function as a free person.

Defendants Timko, Susser ,McAllister, Zagzoug and Morace violated clearly established Federal Laws and internal regulations concerning the handling of classified information . An agency is generally required to follow its own regulations. Vitarelli v. Seaton, 359 U.S. 535, 79 S. Ct. 968, 3 L. Ed. 2d 1012 (1959). Defendants knew that their acts were illegal and detrimental to Plaintiff's safety. Also, it is clear from the amended complaint that defendants, in concert, provided each other and used false information, with the clear intent to keep plaintiff in the wrong forum and deprive him of clearly established right to liberty.

Defendants' counsel improperly argue that defendant Zagzug and Morace are protected by  absolute immunity while performing prosecutor and judge-like functions. In Kalina vs. Fletcher (522 U.S. 118 (1997)), unanimous opinion of the Supreme Court, hold that  the Doctrine of absolute prosecutorial immunity does not protect such conduct as the intentional use of false information, as defendants Zagzoug and Morace did.

Furthermore, Plaintiff came across defendants Zagzoug and Morace acting as officers of the Federal Government , because he was directed to the wrong forum . The

forum in which they unlawfully disclosed or otherwise made available classified information is irrelevant. Once they came across classified information, as officers of the federal Government, they are required by law not to disclose or disseminate classified information, regardless of the forum.

## PERSONAL JURISDICTION

It is clear from the amended complaint and the exhibits attached, that although some defendants in this case are not located in Boston where the conspiracy was initiated to direct Plaintiff to the wrong forum (asylum proceedings), Exhibit 4, their actions were in furtherance of the conspiracy to maintain Plaintiff in the wrong forum, (submitting false information to meet the technicalities of a trivial asylum case), and hide his relation with U.S. Government, with the intent to deprive Plaintiff of protection under PL110-Program.

In a conspiracy, an individual's actions in furtherance of the conspiracy are not unilateral because conspiratorial acts have at their foundation an agreement and the involvement of other co-conspirators. Because an act in furtherance of the conspiracy is on behalf of the conspiracy, the contacts with the forum of the co-conspirator performing the act may become contacts for other co-conspirators. This is not like in Burger King Corp., 471 U.S. at 475, nor it is based on the "unilateral activity of another party or a third person." as the Defendants' Counsel inappropriately argue. In this case a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege

of conducting activities in the forum state, thereby fairly invoking the benefits and
burdens of its laws.

## STATUE OF LIMITATIONS

It is clear from the amended complaint that the effect of the tortious conduct is
continuous. Plaintiff can not engage in "common occupations of life" essential to free
persons to provide for his basic needs , defendants actions put a hold on plaintiff's life
and liberty and his ability to recover is decreasing as the time passes.

A continuing tort exists where a defendant's damaging conduct is a
continuing act and gives rise to successive damages from day to day. <u>Wilson v.</u>
<u>Hartzman, supra</u>. As a result, prescription does not commence to run until the
continuing cause of the damage stops.

Another exception to commencement of prescription on the date of the tort is the
situation in which the tortious conduct that is the operating cause of the damages is a
continuing act, giving rise to successive damages from day to day. In such a case
prescription does not commence to run until the continuing cause of the damages is
abated. <u>Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968)</u>; <u>Devoke v.</u>
<u>Yazoo & M.V.R.R., 30 So.2d 816 (La. 1947)</u>; <u>DiCarlo v. Laundry & Dry Cleaning</u>
<u>Service, 178 La. 676, 152 So.327 (1934)</u>.

Also, as shown in the amended complaint, Plaintiff was directed to the wrong
forum and continuously misled (See. Lumley, Etelamaki, McGruder,) that he would be
assisted according with promises made inside the U.S. Embassy. ¶21 and Exhibit 1.

A party whose conduct induces a plaintiff to refrain from filing a suit within the statue of limitations might be equitably estopped (prevented) from using the expiration of the statute of limitations as a defense. This is based upon the principle that no one may profit from his own wrongdoing:

1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action;

2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or

3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. <u>School District of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981)</u>. <u>Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir. 1978)</u>; see also <u>Miller v. Beneficial Management Corp., 977 F.2d 834, 845 (3d Cir. 1992)</u> .

In this case it is clear that he Department of State (See. Lumley, Etelamaki, McGruder, Deering), continuously misled plaintiff , while maintaining plaintiff case in the wrong forum.

## CONCLUSION

Accordingly, for the reasons stated above, Defendants' motion to dismiss should be denied.

**Certificate of Service**

I hereby certify that a copy of this Answer in Opposition to Defendants' motion to dismiss was mailed on October 06, 2004 to defendants' counsel Damian W. Wilmot, Assistant U.S. Attorney at the following address:

Damian W. Wilmot
Assistant U.S. Attorney
One Courthouse Way
U.S. Courthouse, Suite 9200
Boston, MA 02210

Respectfully submitted.

John Doe
P.O.Box 20109
New York, NY 10001-0005

X_____

Dated: October 06, 2004